## KENNEDY et al. v. CAROLINA PUBLIC SERVICE CO.

(District Court, N. D. Georgia. January 31, 1920.)

1. CORPORATIONS ☞67—DECREASING OUTSTANDING STOCK VALID WHEN NOT INVOLVING AMENDMENT OF CHARTER.

The provisions of Delaware Corporation Law, § 26, prescribing the procedure for amendment of the charter of a corporation "by increasing or decreasing its authorized capital stock," or changing the preference given to any one or more classes of preferred stock, *held* not applicable to the action of stockholders in decreasing the amount of common and preferred stock outstanding, within the charter limits, and which involved no amendment of the charter.

2. CORPORATIONS ☞67—METHOD OF REDUCING CAPITAL STOCK STATED.

Delaware Corporation Law, § 28, providing that any corporation organized thereunder may by two-thirds vote of stockholders reduce its stock by retiring or reducing any class of stock, by purchase or requiring holders to accept a less number of shares in exchange, *held* to prescribe such methods of reduction in the alternative, limited by the nature of the stock to be reduced, and not to permit the corporation to adopt either method, regardless of the reason or justice of the action.

3. CORPORATIONS ☞67—METHOD OF REDUCING PREFERRED STOCK CONTROLLED BY PROVISIONS OF CERTIFICATE.

Under Delaware Corporation Law, § 28, providing that any corporation organized thereunder may reduce any class of its stock by vote of two-thirds of its stockholders, by requiring holders to accept a less number of shares in exchange, or by retirement of a stated number of shares, a solvent corporation having both common and preferred stock, the former the greater in amount, *held* not authorized by vote of two-thirds of all stockholders, voting together, to require preferred stockholders to surrender their shares and accept a less number, when their certificates provided for their retirement by purchase at a stated premium.

4. CORPORATIONS ☞156—EARNINGS APPLIED TO ARREARAGE OF CUMULATIVE DIVIDENDS ONLY AFTER CURRENT DIVIDEND IS PAID.

Where dividends were in arrears on cumulative preferred stock, net dividends earned in a current period *held* equitably applicable first to payment of the dividend for that period, leaving arrearages payable only from any surplus.

In Equity. Suit by Henry B. Kennedy and others against the Carolina Public Service Company. Decree for complainants.

Charles T. & L. C. Hopkins, of Atlanta, Ga., for plaintiffs.
Evins & Moore, of Atlanta, Ga., for defendant.

SIBLEY, District Judge. The Carolina Public Service Company was organized under the Corporation Law of Delaware in 1912, the certificate of incorporation authorizing a capital stock of $1,000,000 common stock and $1,000,000 preferred stock, and fixing as the minimum capital on which business might be done $2,500 of common stock. In point of fact, $500,000 in value of preferred stock and $750,000 of common stock was issued.

On August 20, 1918, dividends on the preferred stock, which were 6 per cent. cumulative dividends, being in arrears for nearly five years, a meeting of the stockholders was held, pursuant to call of the directors, at which more than two-thirds of the preferred stock and two-

thirds of the common stock, voting separately, adopted a resolution which in substance released the obligation for dividends up to January 1, 1919, reduced the preferred stock from 5,000 shares to 3,000 shares and the common stock from 7,500 shares to 6,000 shares.

Certain holders of preferred stock dissented from this action and brought this bill to annul it. Pending the litigation the directors are averred to have declared a dividend of 3 per cent. as earnings for the six months from January 1, 1919, to July 1, 1919, on the preferred stock. A supplemental bill was filed by the petitioners, claiming judgment for 30 per cent. on their original stock as the total accumulated unpaid dividends on it.

Exceptions to the master's report are now to be decided and a de-·· cree to be entered involving the following propositions:

[1] 1. The meeting of stockholders did not conform to the procedure prescribed by section 26 of the Delaware Corporation Law (Rev. Code Del. 1915, § 1940). The action taken was invalid if that section is applicable. The section declares the procedure by which any corporation, created under this act or otherwise, should amend the corporation's charter—among other changes, "by increasing or decreasing its *authorized* capital stock." It is further provided:

"If any *such proposed amendment* would alter or change the *preference* given to any one or more classes of preferred stock *authorized* by the certificate of incorporation, or would increase or decrease the *amount* of *authorized* stock of such class or classes of preferred stock, or would increase or decrease the par value thereof, then the holders of the stock of each class of preferred stock so affected by the amendment shall be entitled to vote as a class upon such amendment whether by the terms of the certificate of incorporation such class be entitled to vote or not."

Evidently it is only when the *authorized capital* as fixed by the certificate of incorporation is to be changed that an amendment of this certificate is necessary. No such change was proposed in this case. The authorized capital fixed by the certificate was within the limits $1,000,000 to $2,500 for the common stock and $1,000,000 to nothing for the preferred stock. Within these limits any amount of either stock could be issued that the directors saw fit, and the action taken by the stockholders' meeting did not go outside these limits. In point of fact the call for the meeting stated, not that the authorized capital. was to be changed, but that the stock "issued and outstanding" was to be reduced. Not only was no amendment of the charter necessary, but no amendment was contemplated, and in my opinion whether section 26 was followed as to procedure or not is entirely immaterial.

[2, 3] 2. Section 28 (Rev. Code Del. 1915, § 1942) provides:

"Any corporation *organized under this chapter* may reduce its capital stock *at any time* by a vote of, or by the written consent of, stockholders representing two-thirds of its capital stock, and after notice of the proposed decrease has been mailed to the address of each stockholder at least twenty days before the meeting is held for that purpose."

This provision evidently applies to a change in the capital actually employed and represented by certificates of stock actually outstanding, within the limits authorized by the charter. The procedure here pre-

scribed appears to be appropriate for the purpose undertaken at the stockholders' meeting and to have been substantially carried out. The questions made are: (a) Is this section appropriate to a case of preferred stock, where no mention of reduction is made in the company's certificate of incorporation or its certificates of preferred stock? and (b) if it be applicable, does it authorize what was done in this case?

As to the first point, although section 13 (Rev. Code Del. 1915, § 1927) declares, "Unless its original or amended charter or certificate of incorporation shall so provide, no corporation shall create preferred stock," yet since this certificate did provide for preferred stock, all the provisions relating thereto in the Corporation Law become a part of this charter, especially section 28, which in terms states "any corporation organized under this chapter," might exercise the powers it confers. I should have thought, in view of the fact that no separate vote for each class of stock to be affected is provided here as in section 26, that this section would refer only to reductions of common stock; but this provision occurs:

"A decrease of capital stock issued may be effected by retiring or reducing *any class* of the stock, or by drawing the necessary number of shares by lot for retirement, or by the surrender by every shareholder of his shares, and the issue to him in lieu thereof of a decreased number of shares, or by the purchase at not above par of certain shares for retirement, or by retiring shares owned by the corporation or by reducing the par value of shares."

Since any class of stock may be thus affected, preferred stock may be. We are then met with the remarkable situation in which, without qualification, a single meeting of all the stockholders of every class may, by a two-thirds majority, destroy any class, if, as contended by this corporation, any method of dealing with the stock may be adopted that is above stated. For instance, if four-fifths of the stock be common stock and one-fifth preferred stock, that meeting, by a two-thirds vote might reduce the preferred stock to one-half or one-fourth its previous par value, with consequent decrease of dividends, by simply exchanging the old certificates for new. Unless the corporation happened to be entirely unable to pay its preferred stock on dissolution, such action would amount to a gift by the meeting from the property belonging to the preferred stockholders to the common stockholders, and a gift until dissolution of a corresponding interest in the earnings of the corporation. As regards the common stockholders, the preferred· stockholder is really an incumbrancer on the assets of the corporation, and so remarkable a power could hardly have been intended to be given a stockholders' meeting.

The law must be construed, not only by what has happened in this case, but what might happen in other cases. While it is true that, this charter and these certificates of stock having been made since the law and under its provisions, no question of impairment of contract thereby could arise, nor would it be a case in which, without due process of law, one is deprived of his property, yet the law, charter, and certificate should at least be construed together as one contract, and a meaning given to them, if possible, that is not so unreasonable as that contended for in this case. This I think may be effected by holding that

the statute intended, if such a class of stock as preferred stock was to be retired, that it should be done under the provisions stated in the stock, if any. In this case those provisions are that the stock should be paid for at 105, together with all accrued unpaid dividends. If, instead of retiring it, this class was to be reduced, similar considerations of reason and justice would require that the reduction be likewise paid for. It may be that there would be a power of retiring or reducing such stock, otherwise than as provided in the certificate, if, in point of fact, the stock was not fairly worth so much, under the provision, "by purchase at not above par of certain shares for retirement." Purchase here, however, would seem to imply a consent on the part of the seller, as well as a willingness to buy on the part of the corporation, manifested through its stockholders' meeting.

I am clear that the action taken in this meeting of reducing the stock of each preferred stockholder by two-fifths, with the corporation still a going concern and able to earn profits, as was immediately afterwards demonstrated, with no consideration given them by the corporation therefor, cannot be upheld as reasonably intended by the entire contract, evidenced by the certificate of stock, the certificate of incorporation, and this statute. It is conceded that the accrued dividends could not be so given away by the action of the meeting. There is nothing, in principle, to distinguish the effort of the meeting to cancel the dividends from their effort to cancel two-fifths of the stock. It appears in this record that the greater number of the preferred stockholders were also common stockholders, and this fact may have had a large influence in procuring the action that was taken; a loss in the preferred stock being offset by an advantage in the common stock.

The statute, therefore, in permitting these several ways of retiring or reducing stock, must be taken to offer them as alternatives, limited by the nature of the stock to be retired or reduced, and not to be applied indifferently, at the will of the corporation, to any sort of stock, regardless of the reason and justice of the action. It is to be noted that the common stock was reduced only one-fifth, while the preferred stock was reduced two-fifths, so that not even relative proportions were observed in the reduction. It is not apparent, however, to me that, had the reduction been in the same ratio, there would be any change in the case.

3. The petitioners, having in no wise consented, and not appearing to have estopped themselves in any way, are entitled to be recognized by the corporation, both as respects their rights to dividends and their holdings of stock, just as though the August 20, 1918, meeting had never occurred, and a decree enjoining treatment otherwise will be entered.

[4] 4. As respects claim made that all unpaid accumulated dividends should be adjudged against the corporation by reason of the 3 per cent. dividend declared from profits between January 1, 1919, and July 1, 1919, the pleadings do not justify that result. While it appears that the declaration of a 3 per cent. dividend on a reduced preferred capitalization of $300,000 must mean that $9,000 has been declared as earnings during 1919, it does not follow that the petitioners

are entitled, merely on this account, to have the entire arrearages of dividends adjudged them out of this fund. It may be, since the action of the meeting of August 20, 1918, was a unit, both as to dividends and with reference to the reduction of the stock, and since the proxies signed therefor was an agreement to both propositions conjoined, they may be binding in no respect, since the object sought has proven at least partly abortive, and the action of the meeting may be subject to be rescinded and the agreement contained in the proxies to be canceled, under all the circumstances, so that each stockholder will be remitted to his original status. Such would appear to be a more just conclusion of the matter than that a few stockholders, by opposing the action of the large majority, should get, not only what they would have gotten, had the majority not so acted, but very much more beside, contrary to the expectation of that majority in taking the action that they did. It does not certainly appear that any issue was presented or joined as to who or how many were entitled to dividends under the old stock, together with the plaintiffs. It is now too late, by amendment, to join such an issue and thresh it out, especially in view of the uncertainties above pointed out as to the real rights of all the stockholders in view of this decision of the court.

Again, this dividend was declared from earnings since January 1, 1919, and, if they were truly such, it would appear to be more equitable that all preferred stockholders entitled to dividends during the period that the earnings were made should participate in the distribution of these earnings, rather than that the earnings should be appropriated to accumulated dividends on some of the stock in former years. The provision for accumulation of dividends would apparently work most equitably by declaring from each year's earnings the 6 per cent. due for that year, and then only carrying any surplus to previous years in which dividends had not been paid. It is true that all such arrearages must be paid before the common stock is paid anything, but not necessarily true that the accumulated dividends should be paid, whether due to few or many, before the current dividends should be met from the current profits.

Leave will be given in the decree to enter judgment for 3 per cent. dividend declared since January 1, 1919, or, at the option of petitioners, they may withdraw all issues concerning dividends and make them the subject of a full and adequate separate proceeding.