ROBERT PENINGTON,

*vs.*

COMMONWEALTH HOTEL CONSTRUCTION CORPORATION,
a corporation of the State of Delaware.

HUGH MCATAMNEY,

*vs.*

BROADWAY, SEVENTH AVE. AND 56TH STREET HOTEL REALTY
CORPORATION, a corporation of the State of Delaware.

*New Castle, May* 21, 1931.

PENNEWILL, C. J., RICE, HARRINGTON, RICHARDS and RODNEY, JJ., sitting.

*Charles C. Keedy*, for receiver.

*William Prickett*, for Protective Committee of Stockholders of Commonwealth Hotel Construction Corporation to the extent to which they are holders of preferred stock, and for Caspar C. Gottdiener, preferred stockholder.

*Samuel Zirn*, of Brooklyn, N. Y. (Gilman & Unger and Wm. F. Unger, all of New York City, of counsel), for a group of preferred stockholders.

*E. Ennalls Berl* and *Paul Leahy*, of the firm of Ward & Gray, for Protective Committee of stockholders of Commonwealth Hotel Construction Corporation to the extent to which they are holders of common stock, and for Harry Weisburg, common stockholder.

*John Biggs, Jr.*, and *Mortimer Brenner*, and *Cook, Nathan & Lehman*, all of New York City, for Protective Committee of stockholders of Commonwealth Hotel Construction Corporation.

RODNEY, J. (delivering the opinion of the Court.)

The consideration of the two first questions determined by the Chancellor and raised by this appeal will be consolidated. The consideration of these questions will not be drawn out at length. It is sufficient that the questions have been carefully considered by this court and we are unanimously of the opinion that the Chancellor was correct in the determination of both questions. A more detailed reconsideration of the questions could add but little to the opinion of the Chancellor as reported *ante* p. 188, 151 *A*. 228.

We shall now address ourselves to the remaining and more important question presented by this appeal. This question is, in brief—Are the preferred stockholders entitled, in dissolution

proceedings, to a preference in the payment of dividends in addition to the par value of the preferred stock where the assets of the company does not include profits from its management? If the answer to this question is in the affirmative, the further question then arises to what point of time are the unpaid dividends computed? The Chancellor determined that since no profits or surplus existed, no dividends on the preferred stock could have accrued and, therefore, no unpaid dividends could be given preference in the dissolution proceedings. The remaining question as to the computation of the time of preference of such unpaid dividends was, of course, not considered by him.

This court does not agree with the conclusion reached by the Chancellor and in view of the importance of the question with relation to the corporate structures under the laws of this State, we have given the matter both serious and special consideration.

The matter has twice been ably argued in this court, exhaustive briefs have been filed and the court believes it is in possession of the references to all pertinent and material cases.

The consideration of the rights of holders of preferred stock of the corporation in question to dividends is largely covered by paragraphs A and E of the Article Fourth of the Certificate of Incorporation. These paragraphs cover fields entirely different. Paragraph A treats solely of the rights of preferred stockholders to dividends while the company is a going concern. Of course, the right to dividends in such a case depends upon the existence of surplus or net profits. This requirement is not only expressly set out in paragraph A, but is also fundamental in the law of corporations.

Paragraph E, however, has no relation to the company as a going concern; it contemplates only the relation of stockholders *inter sese* after all creditors have been paid and the remaining assets of the corporation are distributable to the stockholders. There is no legal requirement, aside from contract or as set out in the certificate of incorporation, that in dissolution proceedings accumulated dividends could only be preferred from surplus or profits. In other words, it is universally conceded that the certificate of incorporation could provide that in dissolution pro-

ceedings the holders of preferred stock would be entitled to a preference of accumulated unpaid dividends before payments to common stockholders even though no surplus or profits existed or had existed. It is, therefore, true that the non-existence of profits creates no legal barrier to the preference of dividends in dissolution proceedings. The question is then one solely of contract between the stockholders. What did the stockholders mean when, in contemplating dissolution proceedings, after the payments of debts, they stipulated that the preferred stockholders should have a return of the par value of their stock together with "unpaid dividends accrued thereon?"

Since, in this case no rights of creditors are involved, and the charter provision under discussion must, in the last analysis, be considered as a contract between the stockholders, let us briefly consider the theoretical position of the organizers of the company and the undertaking of the stockholders.

Shares of both common and preferred stock are created. Everyone understands that the risks assumed by the two classes of stock differ one from the other as do their prospects for profit. The annual income or return to be derived from the preferred stock is limited to seven per centum. Everyone knows that any great balance of profit, in the hope and prospect of which the company is formed, over and beyond this seven per cent., will be solely distributable among the common stockholders. Everyone knows too the cardinal principle that the capital of the company must not be reduced or impaired by the payment of any return or income to the stockholders on account of the money put into the company by them, but that such income or return can only legally be paid from current or accumulated profits.

This payment to the stockholders as a return upon their investment is, in general, termed a dividend. A dividend is a sum of money or portion of a divisible thing to be distributed according to some fixed scheme. So fundamental in the law of corporations is the thought that dividends can only legally be paid from profits or from net assets in excess of capital that the payment or division itself, i. e., the dividend, is sometimes treated as almost synonymous and often confused with the source from which the payment or division is legally made.

The stockholders, knowing the provisions of the law that the dividends on the preferred stock can only be paid from surplus or profits and having in mind the great disparity of prospective income, further agree that the preferred dividends shall be cumulative and that no payment of dividends shall be made on the common stock unless and until all arrearage or deficiency of the dividends on the preferred stock has been paid.

The decisional law of this State has considered the rights of a holder of cumulative preferred stock in a going concern. In *Morris v. American Public Utilities Co.*, 14 *Del. Ch.* 136, 122 *A.* 696 at *p.* 703, the learned Chancellor says:

" * * * That as soon as the agreed dividend which the preferred stockholder is to receive is matured by time, a right to its ultimate payment as against those who have agreed to its payment becomes a vested right. It is a present property interest."

The *Morris Case* was not a case under dissolution proceedings like the present one and we mention it because of its excellent treatment of the rights of holders of cumulative preferred stock. In the cited case the right to cumulative preferred dividends was a right matured against common stockholders by the passage of time subject to the limitation that the dividend could only be paid when a legal fund existed for its payment. In the *Morris Case*, as a going concern, this fund could consist solely in the existence of surplus or net profits.

Turning again to the paragraph concerning dissolution proceedings, we find that the stockholders have agreed, after all creditors have been paid and other claims met, that the preferred stockholders shall receive the par value of their stock with "all unpaid dividends accrued thereon."

Applying then the law relative to cumulative preferred stock to the case at bar what is the situation at the arrival of the date fixed for the first payment of the preferred dividend? There is no legal fund (surplus or profits), in this going concern from which this preferred dividend can be paid. As against the common stockholders, however, the right to this dividend is fixed and vested but the payment must be postponed until there exists a fund from which payment can legally be made. Upon the arrival of the time fixed for the second and subsequent payments of cumula-

tive preferred dividends the situation is identical. The dividend cannot be paid, but the claim exists and the dividend accrues and the amount accumulates awaiting the existence of a legal fund for its payment.

The company now goes into the hands of the receiver and turning again to the paragraph of the charter concerning liquidation proceedings, we find that the stockholders have agreed, after all creditors have been paid and other claims met, that the preferred stockholders shall receive the par value of their stock with "all unpaid dividends accrued thereon." At this point we must advert again to the basic principle heretofore mentioned, viz., that in liquidation or dissolution proceedings there is no requirement that dividends be paid from profits and no inhibition against payment of dividends from any existing assets, including capital. All debts having been paid, all the assets are distributable in the manner agreed upon by the stockholders in paragraph E. We, therefore, find the preferred stockholders, as against the common stockholders, with vested and fixed rights to certain dividends and there now exists a legal fund for their payment.

While it is tacitly conceded that paragraphs A and E relate to different situations, the one concerning the corporation as a going concern and the other relating to the corporation in dissolution or liquidation proceedings, yet it is assumed that the word "dividend" appearing in both must be given the same construction in each. It is further argued that the word "dividend" in paragraph A, relating to the corporation as a going concern, means a division of the profits of the company in excess of capital. Entirely disregarding for the moment the statutory and fundamental law that dividends can only legally be paid from some source other than capital, we see nothing in paragraph A making it obligatory to add to the definition of the word "dividends" any suggestion of the source of the legal payment. The paragraph itself does that when it stipulates that the dividends shall only be paid "from surplus or net profits." That the word "dividend" is often used with no reference to surplus or net profits or other source of funds from which payment is to be made is apparent from a consideration of cases where dividends were declared when no surplus or net profits existed. Cases abound where such

dividends, although illegal, have been made. The courts have uniformly applied the word "dividend" to the illegal division to the stockholders. *Roeblings Sons Co. v. Mode,* 1 *Pennewill,* 515, 43 *A.* 180; *Cochran v. Schetler,* 286 *Pa.* 226, 133 *A.* 232; *Pa. Knitting Mills v. Bayard,* 287 *Pa.* 216, 134 *A.* 397.

It is suggested that the word "dividends" in paragraph E must be construed in connection with the same word in paragraph F having to do with the redemption of capital stock. This merits some attention, for while paragraph E concerns solely liquidation or dissolution proceedings, it does contemplate a division of capital. The redemption of preferred stock provided for in paragraph F is expressly excepted from the operation of the provisions of paragraph E; yet because the redemption of preferred stock brings about a change in the capital structure, the sections E and F are possibly more analogous one to the other than are the other sections. Paragraph F, of course, refers to the redemption of the preferred stock while the company is a going concern and it is certain that the dividends to be paid the owners of the stock redeemed must be dividends declared from profits or surplus and not from capital. Let us briefly consider the application of paragraph F when the preferred dividend is overdue and in arrears and no profits or surplus exist for their payment. Because there are no profits or surplus the dividend cannot be paid, but surely it cannot be argued that the stock can be redeemed unless or until the arrearage of preferred dividend is paid. Such a construction would defeat the benefit of all cumulative features or at least place it in the power of the board of directors to defeat these features. *Kennedy v. Carolina Public Service Co., (D. C.)* 262 *F.* 803; *Sterling v. H. F. Watson Co.,* 241 *Pa.* 105, 88 *A.* 297. Assuming then that the preferred stock could not be redeemed until the dividends accrued thereon had been paid, we find this amount of preferred dividends accumulating and simply awaiting the existence of a legal fund for its payment. If it be true that these unpaid dividends accumulate under Paragraph F and redemption provision under that paragraph cannot be applied until these dividends are discharged, then it must be apparent that the dividends have accrued by the passage of time and are not dependent for their mere accrual

upon the existence of surplus or profits for no surplus or profits
have existed, but do depend upon the surplus or profits solely
for payment.

It would be most anomalous to find that the company as
a going concern could not redeem its preferred stock under para-
graph F because of an accumulation of preferred dividends in
arrears and no profits or surplus for their payment but that by
the simple expedient of liquidation proceedings and re-organiza-
tion by the common stockholders under Paragraph E the entire
arrearage of preferred dividends could be wiped out.

The learned Chancellor in his attempt to find the meaning
of the word "dividend" correctly seeks also to find the reason
for the inclusion of the word "accrued" he correctly considers
that "accrued" must mean something beyond "unpaid." "Ac-
crued" is not synonymous with "unpaid" and does not cover the
same field for a dividend may have accrued and not be unpaid.
The word "accrued" itself is derived from the Latin—*add* and
*cresco*—to grow to—and in such a context as that under consider-
ation and construed with the word "thereon," it means these
claims for dividends that have grown to the par value of the
stock and matured and become due by the passage of time by
virtue of the provisions of the certificate of incorporation creat-
ing the cumulative and preferred rights.

Such is our conclusion of the case upon principle. While
it is true that in cases such as this a correct determination de-
pends upon the phraseology of the particular charter or written
instrument, yet it is gratifying that in other jurisdictions in the
consideration of analogous provisions we find an almost entire
unanimity sustaining our views.

In 1909, the case of *In re W. J. Hall & Co.*, L. R. 1909, 1
*Ch.* 521 was decided. The court reached a conclusion opposed
to that now reached by this court. The *Hall Case* was followed
by the New York case of *Michael v. Cayey-Caguas Tobacco Co.*,
190 *App. Div.* 618, 180 *N. Y. S.* 532, and, in fact, furnished
most of the support therefor. These two cases are the only ones
opposed to the present position of this court. In 1916, the
authority of the *Hall Case* was strongly questioned by the court
in the case of *In re New Chinese Antimony Co., Ltd.*, L. R. 1916,

2 *Ch.* 115. In 1920, the authority of the *Hall Case* was completely destroyed by the case of *In re Springbok Agricultural Estates, Ltd., L. R.* 1920, 1 *Ch.* 563, where in a case indistinguishable upon principle from the case now before us, the court reached the same conclusion adopted by this court. Neither of the two cited cases were mentioned by the New York court so that case stands alone with its main authority swept away and leaving only its reasoning to support it.

In 1929, two cases involving the rights of preference shareholders in dissolution proceedings were determined by the English courts, viz., *In re Roberts and Cooper, Ltd., L. R.* 1929, 2 *Ch.* 383, and *In re Dominion Tar and Chemical Co., Ltd., L. R.* 1929, 2 *Ch.* 387.

In the first case the phrase under consideration by the court was that the preference shares should receive the amount paid thereon "together with any arrears of dividend due thereon at the date of the winding up, etc." Eve., J., held

"If the company had declared the dividends, they would have been 'due.' No dividend having been declared, none had become due."

The learned Justice distinguished this case from the *New Chinese Antimony Case* and the *Springbok Agricultural Case* by the presence of the word "due" stating

"I think this case is distinguishable from those cited by the presence of the word 'due.' "

A week later the same Justice determined the *Dominion Tar and Chemical Co. Case.*

The principal point in the latter case was whether in the payment of arrears of preference dividends the liquidator ought to deduct income taxes on such arrears. The decision of this latter case may not be here particularly material; the language hereafter quoted from the opinion of the *Dominion Tar Case* may be *obiter dicta* but it does show an approval in 1929 of the earlier decisions of the *New Chinese Antimony Company* and the *In re Springbok Agricultural Estates, Ltd.*

In the *Dominion Tar and Chemical Co. Case,* Eve., J., said:

"I think that the judgments of *Neville, J.,* in the *New Chinese Antimony Co., Ltd.* (3), and of *P. O. Lawrence, J., In Re Springbok Agricultural Estates,*

*Ld.* (1), indicate that in their opinion the real sum payable to the preference shareholders under clauses not distinguishable from the one which I have to construe was the full amount of the preferential dividend without any reference to the question whether the distributable fund represented any reserve of profits or surplus profits earned by the company. * * * In other words, it seems to me that the construction which they have put upon the words, 'all arrears of the said preferential dividend', was not arrears of such sums as the preference shareholders would have received had the company been a going concern—had the company earned profits available for the preferential dividend and had they in fact declared their dividend—but all arrears of the interest payable to the preference shareholders at the rate fixed by the contract between them and the company, and that in truth and in substance the expression 'all arrears of the said preferential dividend' in a clause of this sort means a sum equal to the amount secured as preferential dividend to the shareholders by the contracts under which the preference shares were issued. In my opinion, an obligation, which the preference shareholders would be under in one set of circumstances, cannot be imposed on them by the court in a different state of circumstances, and I think on these grounds, fortified by the decisions to which I have referred, the preference shareholders in this case are entitled to their full 7 per cent. dividend before the surplus assets are applied in making further payment to the ordinary shareholders."

Aside from the English cases, the conclusion of this court finds full support in *Drewry-Hughes Co. v. Throckmorton,* (1917) 120 *Va.* 859, 92 *S. E.* 818; *Johnson v. Johnson & Briggs, Inc.,* (1924) 138 *Va.* 487, 122 *S. E.* 100; *National Bank v. Amoss,* (1915) 144 *Ga.* 425, 87 *S. E.* 406, *Ann. Cas.* 1918*A,* 74; and in *Fawkes v. Farm Lands Inv. Co.,* (*Cal. App.*) 297 *p.* 47 (decided since the argument in the instant case); and partial support in *Spear v. Rockland-R. L. Co.,* (1915) 113 *Me.* 285, 93 *A.* 754, 6 *A. L. R.* 793; *Page v. Whittenton,* (1912) 211 *Mass.* 424, 97 *N. E.* 1006; *Langben v. Goodman,* (*Tex. Civ. App.* 1925) 275 *S. W.* 841; *Lonsdale Securities Corp. v. Int. Mer. Marine Co.,* (1927) 101 *N. J. Eq.* 554, 139 *A.* 50.

The *Drewry-Hughes Co. Case,* and that of *Johnson v. Johnson & Briggs,* seem indistinguishable from the present case and the *Johnson Case* expressly refers to the *Michael Case* and declines to follow it.

We are, therefore, of the opinion that in the present case the holders of the cumulative preferred stock are entitled in the

liquidation proceedings to be paid in addition to the par value of their stock the unpaid dividends accrued thereon.

We have reached the foregoing conclusion after a due and careful consideration of the argument on the part of the common stockholders. Counsel for the common stockholders have ably emphasized the fact that at common law, and in the absence of any statute or agreement to the contrary, all stock enjoys equal rights and privileges, and that claims for special preferences must be clearly provided by the charter contract. Such was in effect the holding of *Gaskill v. Gladys Belle Oil Co.*, 16 *Del. Ch.* 289, 146 *A.* 337.

Being of the opinion that the charter contract in the present case does clearly provide for the preferences claimed by the preferred stockholders, we are of the opinion that the requirement contended for is fully met.

The question then arises to what point are these dividends payable? Are they payable to the time of the appointment of the receiver, or down to the time of the distribution by the receiver?

Like the answer to the preceding question heretofore discussed, the answer to this last question lies in a large measure, in the agreement entered into by the stockholders through the medium of the certificate of incorporation.

It seems apparent that the real agreement of the stockholders provided (by paragraph A) that so long as the company was a going concern the preferred stockholders would be entitled to a cumulative seven per cent. dividend; by paragraph E it was agreed that when the company ceased to do business, or, in the words of the paragraph itself "in the event of the liquidation, dissolution or winding up of the corporation, or upon any distribution of its capital * * * " the holders of the preferred stock were entitled to the par value of the stock "and all unpaid dividends accrued thereon" before any amount should be paid or assets distributed to the common stockholders.

The dividends, we think, that were made payable under paragraph E were those dividends that had accrued under paragraph A and which were unpaid because of the lack of any legal fund for their payment. The dividends accrued before the ap-

pointment of the receiver and while the company was a going concern and would have been then paid had there then existed surplus or profits liable for their discharge and the liquidation proceedings merely furnished the fund legally available for their payment.

The agreement of the stockholders related to the company as a going concern and simply provided (by paragraph E) for the distribution of assets after dissolution proceedings had been commenced. The agreement of the stockholders did not attempt to control the operation of the company during the liquidation proceedings, but in such proceedings merely regulated the distribution of assets. After the appointment of the receiver the management of the company was taken from the officers and stockholders and placed in *"custodia legis."* While the company was in the hands of the court, through the instrumentality of its receiver, no dividend could be declared nor, do we think any could accrue as such terms were used in Paragraph E of the charter.

While we have heretofore reached the conclusion that dividends on the preferred stock mentioned in the charter under discussion could and did accrue periodically though no profits were made or surplus existed and that such accrued dividends could be paid on dissolution proceedings because, in our opinion, such was the agreement of the parties, yet we think the dividends so to be paid on the dissolution proceedings must, to be within the agreement of the parties, be those dividends which had accrued while the company was a going concern and which would have been paid from surplus or profits had such funds existed.

We are not unmindful of the fact that a considerable period of time has elapsed since the appointment of the receiver nor of the further fact that the appointment itself was that of a receiver generally and that in the original order there was no specific authority to wind up the corporation. The receiver, however, did not operate the company as a going concern and all his activities have been directed to collecting and conserving the assets for distribution.

We are of the opinion that the holders of the preferred stock

are entitled to the par value of their stock together with all unpaid dividends accrued thereon up to the time of the appointment of the receiver by the Delaware court.

The authorities upon the latter point herein considered are quite limited in number. The conclusion reached by us finds support in *Drewry-Hughes Co. v. Throckmorton*, 120 *Va.* 859, 92 *S. E.* 818, and in the language of Lord Sterling in *Re Chrichton's Oil Co.*, *L. R.* (1902), 2 *Ch.* 86.

HARRINGTON, J. (dissenting):

This is a proceeding to wind up the affairs of an insolvent corporation and to distribute its assets among the stockholders.

The Chancellor in the court below (*ante p.* 188, 151 *A.* 228) considered three questions:

1. The rights of stockholders who had purchased their stock from the corporation at a premium.

2. The rights of stockholders who had not fully paid for stock for which they had subscribed.

3. The rights of preferred stockholders to claim an amount equivalent to the unpaid cumulative dividends on such stock from the inception of the corporation, though there were no earnings or net profits to distribute.

The majority of the court held that questions 1 and 2 were correctly decided by the lower court. I agree with this conclusion and, therefore, will not consider either of these questions in detail.

The corporate enterprise was not successful and no net earnings or profits were ever realized from it. Because of that fact, no dividends were ever paid on the preferred stock.

It is, also, conceded that the fund now in the hands of the receiver, for distribution, was derived solely from capital assets, and in no sense from earnings.

Differing from the court below, the majority of this court have, nevertheless, reached the conclusion that the preferred stockholders are entitled to an amount equivalent to the unpaid cumulative dividends on their stock, from the time the corporation was organized, in preference to the holders of the common stock. I regret that I am unable to agree with this conclusion.

The particular provision of the charter, to be construed by

us, is that part of paragraph E, which provides that "In the event of any liquidation, dissolution, or winding up of the corporation, or upon any distribution of its capital, other than the redemption of its preferred stock, the holders of the preferred stock shall be entitled to be paid in full the par value thereof, and all unpaid dividends accrued thereon, before any amount shall be paid or any assets distributed to the holders of the common shares."

A corporate charter is not only a contract with the State, but is, also, a contract between its individual stockholders, and in case of doubt as to the meaning of any particular clause or phrase, like any other contract, all of its provisions must be considered.

I concede that, generally speaking, the word "dividends" is not always used in the same sense, and, therefore, does not always have the same meaning.

In ascertaining the meaning of the phrase "and all unpaid dividends accrued thereon," as used in Paragraph E, we must, therefore, not only consider the usual meaning of that word, and of the word "accrued," used in connection therewith, but, also, whether other provisions of the charter, when read as a whole, throw any light on the sense in which these words are used in this particular paragraph.

Paragraph A, in part, provides that the holders of the preferred stock "shall be entitled to receive ——— out of the surplus or net profits of the business of the corporation in each year, dividends ———."

The cumulative provision with respect to the preferred stock immediately follows this provision, but as it appears in the statement of facts I will not repeat it here.

Paragraph B, in part, also, provides that "Whenever dividends at the rate of seven per centum (7%) per annum upon the preferred stock for all past dividend periods shall have been declared ——— the ——— directors if the remaining surplus or net profits be sufficient therefor, may declare dividends on the common stock ———."

Paragraph C further provides that "after the payment of the said preferential dividends of seven per centum (7%) per

annum to the holders of the preferred stock and non-cumulative dividends of six per centum (6%) on the common stock, the Board of Directors shall set aside twenty per centum (20%) of the remaining net profits for any year as a sinking fund to be used in the purchase or redemption of the preferred stock ———.''

Paragraph F, however, must not be overlooked. It provides that "The preferred stock shall be subject to redemption, in whole or in part, at the election of the Board of Directors, at any dividend date, at 110 per share, plus all unpaid, accrued or accumulated dividends thereon."

When this paragraph is read in connection with paragraph C, I think I may safely assume that it will not be contended that "the unpaid, accrued or accumulated dividends" referred to, were intended to be paid from capital.

After the words "In the event of any liquidation, dissolution, or winding up of the corporation, or upon any distribution of its capital," Paragraph E inserts the words "other than the redemption of its preferred stock." This provision would merely seem to be because the rights of the holders of such stock, as to both capital and undistributed profits, are clearly and specifically taken care of in Paragraph F.

I will consider the similarity of the language of the pertinent phrase in this paragraph with that used in Paragraph E and the significance of that fact at a subsequent stage of this opinion.

In considering the meaning of Paragraph E, it is apparent that the word "dividends" is used throughout the remainder of the charter in the sense of a distribution of surplus or net profits. In fact, this seems to be conceded by the majority of the court.

It is said, however, that Paragraph E "has no relation to the company as a going concern; it contemplates only the relation of stockholders *inter sese* after all creditors have been paid, and the remaining assets of the corporation are distributable to the stockholders."

Conceding that to be true, in view of the axiomatic rule that the context of the whole contract must be considered in determining the meaning of a doubtful clause, does this statement answer the question to be determined?

The holders of the preferred stock are entitled to such pref-

erences and to such preferences only, as are given them by the charter of the company.

It is admitted by the holders of the common stock that the preferred stock has the preference both in the distribution of capital and the undistributed income thereon, but it is contended, and I think correctly so, that its preference extends no further.

If the meaning of the word "dividends" is clearly defined by the context of the charter, read as a whole, what is there to indicate that it is used in a different sense in Paragraph E? I find no satisfactory answer to this question.

Even if the words "unpaid dividends ——— thereon" stood alone and there were no other explanatory or restrictive words to consider, the rule of construction that ——— "a word, or phrase, repeated in a statute will bear the same meaning throughout the statute, unless a different intention appears" ——— would seem to apply. *Lewis' Sutherland on Stat. Constr.*, Vol. 1 § 299; *Silvia v. Scotten*, 2 *W. W. Harr.* (32 *Del.*) 295, 122 *A.* 513; Minority Opinion; *State v. Highfield*, 4 *W. W. Harr.* (34 *Del.*), 152 *A.* 45.

True, the above citations relate to the construction of statutes or constitutional provisions, but the same rule applies with equal force to contracts.

As a matter of fact, *W. J. Hall & Co., Ltd., L. R.* (1909), 1 *Ch.* 521, is, apparently, an example of the application of this rule.

I appreciate the fact that this case was distinguished by the court in *The New Chinese Ant. Co., Ltd., L. R.* (1916), 2 *Ch. D.* 387; that the statement as to the meaning of the word "dividends" was treated as *dicta* in *Re Springbok Agr. Est., Ltd., L. R.* (1920), 1 *Ch. D.* 563, and that both of these cases were approved in *Re Dom. Tar and Chem. Co., Ltd., L. R.* (1929), 2 *Ch. D.* 387. Notwithstanding that fact, the reasoning of the court in the *Hall Case* strikes me as being particularly persuasive.

The precise charter language in these cases will be considered later.

But because of the use of the word "accrued" in connection with the words "unpaid dividends ——— thereon," it is un-

necessary to rely solely on the rule of construction above referred to.

Considered from this aspect, the phrase "unpaid dividends accrued thereon" is a very different phrase from "unpaid dividends thereon" and has a very different meaning. In order to come within its meaning the "dividends" referred to must not only have been "unpaid" but must, also, have "accrued."

The word "accrue" means: (1) To increase, augment; (2) to come by way of increase; to arise or spring as a growth or result, to be added as increase, profit or damage, especially as the produce of money lent, (Standard Dictionary; Webster's New International Dictionary); (3) to grow to; to be added to, as the interest accrues on the principal. Bouvier's Law Dictionary.

The word "accrued" means added as increase; accumulated, as interest or rent. (Standard Dictionary; Webster's New International Dictionary).

That the word "accrued" is synonymous with the word "accumulated" is, therefore, apparent. *Revloc Supply Co. v. Troxell*, 281 *Pa.* 424, 126 *A.* 774.

In fact, this seems to be admitted by the attorneys for the preferred stockholders. If these words are synonymous, the phrase "and all unpaid dividends accrued thereon" can be read as though it were "and all unpaid dividends accumulated thereon." When so read that the word "dividends" refers to undistributed net earnings or profits on the corporate capital, in which the preferred stock has preferential rights by other provisions of the charter, would seem to be apparent.

This conclusion as to the intent of Paragraph E is further strengthened by the fact that with the change of the word "and" to "plus," and the addition of the word "or" and of the synonymous and alternative word "accumulated," precisely the same provision appears in the redemption clause.

I have already called attention to the fact that that paragraph provides for the redemption of the preferred stock at 110 "plus all unpaid, accrued or accumulated dividends thereon."

As I view it, Paragraphs E and F were both drawn on the same theory and were intended to secure precisely the same

rights to the preferred stockholders in any earned but undistributed income of the corporation.

Under this construction of Paragraph E, as there are no earnings in the hands of the receiver for distribution the preference of the preferred stockholders can only extend to the return of capital based on the par value of the stock.

Such was the conclusion of the court in *Michael v. Cayey-Caguas Tobacco Co.*, 190 *App. Div.* 618, 180 *N. Y. S.* 532, 533, where there were likewise no profits to distribute. In that case the language used in the dissolution clause was "and all accrued and unpaid dividends thereon."

As I view it, the English cases cited in the majority opinion have little or no bearing on this phase of the case by reason of the wording of the charters construed.

In *The New Chinese Ant., Ltd., L. R.* (1916), 2 *Ch. D.* 155, the charter provided that the surplus assets, among other things, should be used "in paying off arrears (if any) of the preferential dividend aforesaid."

In *Re Springbok Agr. Est., Ltd.*, (1920), 1 *Ch.* 563, the language of the charter was identical with that used in the *Chinese Ant. Case*, with the exception of the insertion of the word "the" before the word "arrears" and the omission of the parenthesis enclosing the words "if any."

In *Re Tar & Chem. Co., Ltd.*, (1929), 2 *Ch.* 387, the language used would seem to be even broader. It was ———— "all arrears of the dividend whether earned or declared or not."

In considering this case, the court said, however, that the clear language of the *New Chinese Antimony* and *Springbok Cases* was "not distinguishable from the one which I have to construe."

It is unnecessary to make any further comments on the charter language in that case but that the phrase "arrears of ———— dividend" is very different from the phrase "unpaid dividends accrued thereon" would seem to be apparent.

*Mich. Law Revised Dec.*, 1930, *p.* 250.

In considering the English cases, we should also bear in mind that it has been held that a preferred stockholder is confined to a return of capital where the language of the dissolution clause is "together with any arrears of dividend due thereon at the date

of winding up," etc. *In re Roberts & Cooper, Ltd.*, *L. R.* (1929), 2 *Ch.* 383.

The only other cases that give any particular consideration to this question are *Johnson v. Johnson & Briggs*, 138 *Va.* 487, 122 *S. E.* 100, 101; and *Drewry-Hughes Co. v. Throckmorton*, 120 *Va.* 859, 92 *S. E.* 818.

In the *Briggs' Case*, the charter language used was "and any arrears of dividends due and unpaid to it."

The *Throckmorton Case* seems to be inconsistent with my conclusion in this case as the charter provision was ——— "and the amount of dividends accumulated and unpaid thereon."

I, however, am unable to agree with the reasoning of that case. It is pointed out that the return on the preferred stock is limited by the charter of this company. That is true, but to give the holders of such stock the rights claimed by them where there are no earnings to distribute, and in view of the language used, would seem to be treating them as creditors, rather than as shareholders in the corporate venture. 34 *Harvard Law Review*, 303.

For the reasons above given, I am forced to the conclusion that the decree of the court below should be affirmed in its entirety.

I am, nevertheless, bound by the conclusion reached by the majority of the court. That being true, it is necessary for me to record my vote as to when the dividend calculations on the preferred stock shall cease. The majority of the court hold that such calculations shall cease on the date of the appointment of the receiver. Without stating my reasons for it, I agree with this conclusion.

RICHARDS, J., also dissented and concurred in the views expressed in the opinion of Judge Harrington.

# CASES

IN THE

# ORPHANS' COURT