## In re FIRST NAT. BANK OF ARTHUR et al.

### McDONALD et al. v. LUKE et al.

### No. 6738.

Circuit Court of Appeals, Seventh Circuit.

Dec. 15, 1938.

624

Frank J. Thompson, Robert F. White, and W. C. Ingram, all of Sullivan, Ill., for appellants.

John E. Clark, of Danville, Ill., for appellees.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

This appeal presents this question:

Should the distribution to bank stockholders, pursuant to Title 12 U.S.C.A. § 197[1], of assets remaining after payment of all depositors and creditors in full, with interest, be on the basis of the percentage which the amount each stockholder paid bears to the total amount of the assessments collected, or should payment be first made to those whose percentage of assessment payment exceeded payments made by other stockholders in the amount of such excess?

The First National Bank of Arthur was closed by Presidential order, March 4, 1933, and never reopened. A receiver was appointed in December, 1933, and a hundred per cent stockholder's assessment was levied in March, 1934. Payments were made by stockholders on this assessment in varying percentages. All creditors and depositors were paid in full with interest.

The instant case deals with the distribution of moneys on hand after the payment of debts, but which sums are not sufficient to pay all stockholders the full amount by them paid on their assessments.

There were five hundred shares of capital stock of $100 par value held by six stockholders, three of whom paid their stock assessment in full. Others paid from 13.5 to 80.5 per cent of their assessments. The court ordered distributions to be made by the shareholders' agent on the basis of the ratio which the amounts paid on the assessments bore to the total amount paid.

Appellants argue that where the amount of the distribution is insufficient to repay all the assessment payments, distribution should be preferential, that is, those who paid the *largest percentages* should be given preference to the extent to which their percentage of payment exceeded the payment made by other stockholders.

One stockholder had, in 1932, transferred three hundred and thirty-three shares to a Florida investment company which was unable to make the payment of any part of its assessment. Suit was instituted against the assignor to collect the assessment on this stock and the action was settled for 69% with the court's and other stockholders' approval.

It would, in the absence of a statute requiring a different distribution, seem just and equitable that the stockholder who made a *one hundred per cent payment on* his assessment should, to the extent that his percentage exceeded the percentage of his fellow stockholders, be first repaid. Without such full payment by him there would be no fund to distribute. The discharge of his assessment liability made it possible for the depositors to be paid in full. A fact situation is therefore disclosed which makes appropriate the application of the doctrine of subrogation.

The reasons advanced in the opinion of the court in Penington v. Commonwealth

---

[1] "The proceeds of the assets or property of any such association which may be undistributed at the time of such meeting or may be subsequently received shall be distributed as follows:

"First. To pay the expenses of the execution of the trust to the date of such payment.

"Second. To repay any amount or amounts which have been paid in by any shareholder or shareholders of such association upon and by reason of any and

all assessments made upon the stock of such association by the order of the Comptroller of the Currency in accordance with the provisions of the statutes of the United States; and

"Third. The balance ratably among such stockholders, in proportion to the number of shares held and owned by each. Such distribution shall be made from time to time as the proceeds shall be received and as shall be deemed advisable by the said comptroller or said agent."

Hotel Co., 17 Del.Ch. 188, 151 A. 228, affirmed on this point in 17 Del.Ch. 394, 155 A. 514, 75 A.L.R. 1136, in a somewhat analogous situation, are approved.

The second paragraph of the statute, relied on by appellees, does not necessitate a different conclusion. This subdivision was intended to cover instances where the recoveries were sufficient to repay all assessments in *full*. It does not *specifically* cover instances like the present one, nor was it the intention of Congress to include cases where only partial repayments are made.

Nor does the fact that part payment of the stock assessment was the result of a compromise of a law suit, modify the otherwise appropriate order of payment. Neither the motives nor the reasons of the stockholders in making full or part payment are material. Presumably one who paid but thirteen per cent of his assessment was financially embarrassed,—or there may have been a legal question as to the exemption of his property from execution. We are not interested in the reasons why A. paid thirteen per cent of his assessment or why B. paid his in full. We are interested in the stockholders' *payments* and in the *percentages* they bear to the assessments lawfully made against them and for which they were legally liable. Such facts afford the basis for the determination of the share which stockholders should receive out of a fund insufficient to pay all in full.

The decree is reversed with directions to enter one in accord with the views here expressed.