24 N.J. Super. 348 (1953)
94 A.2d 497
ETHEL KLEIN, ET AL., PLAINTIFF-APPELLANTS,
v.
MAX GREENSTEIN, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1953.
Decided January 28, 1953.
*349 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. W. Louis Bossle argued the cause for the appellants.
Mr. Bernard Eskin (of the Pennsylvania Bar), argued the cause for the respondents (Messrs. Wolf, Block, Schorr and Solis-Cohen (of the Pennsylvania Bar), of counsel; Messrs. Starr, Summerill & Davis, attorneys).
*350 The opinion of the court was delivered by BIGELOW, J.A.D.
The plaintiffs appeal from a judgment rendered in the Chancery Division dismissing their complaint. The plaintiffs, who are stockholders of the defendant Camden Grocers Exchange, allege that the company yearly, since 1941, has paid extra dividends to many of its stockholders but not to plaintiffs. They seek a judgment in an amount equal to what they allege would be their pro rata dividends.
The company has followed the practice yearly of refunding to each stockholder who is also a customer of the company, an amount equal to a certain percentage of the price of his purchases. Some years the rebate was figured at 2%; other years the percentage has been lower. For example: Harry W. Abbott, the owner of one share of stock, bought from the company in 1942 merchandise in the sum of $6,624.90 and received a rebate of 1% or $66.25. The purchases of Joseph Werner, holding ten shares, reached $5,120.60, and his refund was $51.21. The plaintiffs have bought nothing from the company and so have received no rebates. It is these payments to some of the stockholders that the plaintiffs call dividends, which are the subject of the complaint.
The corporation has also made distributions of net profits among all its stockholders in proportion to their stockholdings. In 1945 the dividend was at the rate of $8 a share; in each of the other years mentioned in the testimony the rate was $6 a share.
The company was incorporated in 1930, in this State, probably under our General Corporation Law, and since then has conducted a wholesale grocery business. In 1940 the owners of the business decided to reorganize it informally as a cooperative enterprise. Half the capital stock was then owned by the defendant Max Greenstein, and the other half by Elias Klein (since deceased), his wife and their son, the plaintiff Oscar Klein, who held 55 shares. The reorganization was accomplished by the stockholders selling their stock at par, $100 a share, to the company for resale to retail grocers. *351 The resale of the shares took several years to consummate. At the end of 1950 Greenstein retained only five shares and Oscar Klein five; but his sister, Mrs. Bloom, held 50 shares that had been given her by her parents, and her husband five shares. 1230 1/2 shares were then owned by retail grocers, most of whom held one or two shares each, some three, four or five shares, and two retailers had each ten shares. And, last, 235 1/2 shares were held by the South Jersey Grocers Association, an association whose membership included all the grocers who individually owned stock in the corporation. Each of the grocer-stockholders had signed an agreement with the company designed to prevent the shares falling into the hands of others than grocers, and to secure for each grocer a buyer for his shares upon his death or retirement from business.
The cooperative plan has been successful. The business of the company has grown; it has earned and paid regular dividends on its stock and has accumulated a surplus so that each share has a book value 50% greater than in 1941. In 1938 the net profit of the company was only $1,214; in 1939, $1,873, and in 1940 there was a loss of $1,332. Then came the reorganization. From 1941 to 1950 net profits after the rebates in question averaged $20,204 a year. The president of the company says that the policy of paying refunds to customers was, in large part, responsible for the development and expansion of the business, and that the payment of such refunds was expected by customers who made regular purchases from the company. He added that in determining the rate of payments the directors considered the effect upon future sales, if the amount of the refund was reduced or increased. While the grocer-stockholders and their association, by virtue of holding 95% of the company's stock, absolutely control its business, they have not abused their power by voting too large rebates. They have conserved the resources of the company and built up its surplus fund.
*352 "Now, it is certain that in the absence of express statutory sanction, a corporation cannot, except by unanimous consent of its stockholders, make a distinction in the rate of dividends paid, among stockholders of the same class. And it cannot accomplish this result merely by denominating as `bonus' the excess dividends paid to one group of stockholders; the court will look through the form into the substance of the scheme." Scott v. P. Lorillard Co., 108 N.J. Eq. 153 (Ch. 1931); affirmed 109 N.J. Eq. 417 (E. & A. 1932). Equally the corporation cannot rely on the subterfuge of calling the dividend a rebate or a discount. But in the case before us we find no subterfuge; the rebates to which appellants object have only one characteristic of dividends upon capital stock, namely, that they were paid to stockholders alone. A dividend is a return on the stockholder's investment. Penington v. Commonwealth, etc., Corp., 17 Del. Ch. 394, 155 A. 514, 75 A.L.R. 1136 (Del. Sup. Ct. 1931). It is distributed among stockholders of the same class in proportion to the number of shares held by each. Sherman v. Pepin Pickling Co., 230 Minn. 246, 41 N.W.2d 571 (Minn. Sup. Ct. 1950). By limitation found in our Corporation Act  and elsewhere it is the general rule  dividends can be paid only out of surplus or net earnings. The determination of net earnings often presents difficult questions. National Newark, etc., Co. v. Durant Motor Co., 124 N.J. Eq. 213 (Ch. 1938), affirmed 125 N.J. Eq. 435 (E. & A. 1939).
Not every benefit obtained by a stockholder from his corporation is a dividend. Northwest Eng. Corp. v. Wisconsin Dept. of Taxation, 241 Wis. 324, 6 N.W.2d 198 (Sup. Ct. 1942). The challenged payments made by the Camden Grocers Exchange to the grocers who owned stock were not dividends. Certainly the sim of $66.25 paid Mr. Abbott was not a return on his investment of $100 in the stock of the company, but was a return or refund of 1% of the purchase price of the groceries he had bought. The distributions among the grocer-stockholders were not proportionate *353 to the number of shares held by each. Abbott was paid 12 times as much in proportion to his stock as was Werner, whose refund was only $51.21, although he held ten shares. Whether or not the refunds were made out of net earnings depends, of course, on whether we calculate net earnings before or after payment of the refunds. The company's accountant treated the payments as a discount, reducing the amount of net sales. We reiterate that the basic contention of the plaintiffs cannot be sustained, namely, their insistence that the rebates or refunds to the grocers were dividends on their shares of stock.
Judge Haneman, who heard the suit in the Chancery Division, dismissed the complaint on the ground of laches and estoppel. We agree with him on that score. For that reason as well as on the ground discussed above, the judgment is affirmed with costs.