WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Succeeding Trustee by appointment of the Chancellor under the Last Will and Testament of William Winder Laird, deceased,

*vs.*

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Executor of the Last Will and Testament of Mary A. B. duPont Laird, deceased, Mary Laird Downs, Alletta Laird Downs, William Winder Laird, Jr., Rosa Laird and Wilhelmina Wemyss Laird.

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee under a Deed of Trust, dated July 25th, 1930,

*vs.*

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Executor of the last Will and Testament of Mary A. B. duPont Laird, deceased, Mary Laird Downs, Alletta Laird Downs, William Winder Laird, Jr., Rosa Packard Laird and Wilhelmina Wemyss Laird.

*New Castle, Oct. 16, 1940.*

*Charles F. Richards* and *Caleb S. Layton,* for Wilming-Trust Co., trustee, and executor of last will and testament of Mary A. B. duPont Laird, deceased.

*Robert H. Richards,* for Mary Laird Downs, Alletta Laird Downs, William Winder Laird, Jr., Rosa Laird and Wilhelmina Wemyss Laird.

THE CHANCELLOR: Mary A. B. duPont Laird, widow of William Winder Laird, deceased, was the life beneficiary of the income from both of the trust funds involved in these actions. During her lifetime cash dividends, payable to stockholders of record on specified dates, were declared on certain shares of corporate stock, which were owned on the requisite dates by either one, or the other of said trust estates. By the provisions of the resolutions passed by the corporate boards declaring these dividends, they were not payable, however, until certain specified future dates. They

were duly paid to the trustee at the proper times, but Mrs. Laird had died prior to the receipt of them. The question to be determined, therefore, is whether these dividends are payable to Mrs. Laird's executor as income belonging to her estate, or whether they are payable to the beneficiaries of both trust funds after her death.

Interest accrues from day to day, and in apportioning income of that nature between the equitable life tenant and those entitled in remainder, it is ordinarily calculated to the date of the death of the life tenant. *Wilmington Trust Co. v. Chapman,* 20 *Del. Ch.* 67, 171 *A.* 222, affirmed by the Supreme Court on Appeal, *Massey v. Wilmington Trust Co.,* 20 *Del. Ch.* 454, 180 *A.* 927. A different rule usually applies, however, to dividends on corporate stock held by the trust estate. There, the general rule is that the estate of the life beneficiary of the income is entitled to all regular cash dividends that have been declared during her lifetime, for the benefit of stockholders of record on dates prior to her death, though such dividends are not actually payable or received by the trustee until dates subsequent thereto. *In re Northern Cent. Dividend Cases,* 126 *Md.* 16, 94 *A.* 338, 339; *Ward v. Blake,* 247 *Mass.* 430, 142 *N. E.* 52; *Wright v. Tuckett,* 1 *J. & H.* 266, 70 *Eng. Rep.* 747; 2 *Scott on Trusts,* § 236.2; *Restat. Trusts,* § 236. This is apparently because of the theory that when a dividend is declared, it is, in effect, set aside by the corporation, as money in hand, for the benefit of the stockholder entitled, though it is not then payable. *Wheeler v. Northwestern Sleigh Co., (C. C.)* 39 *F.* 347; *Cogswell v. Second Nat. Bank,* 78 *Conn.* 75, 60 *A.* 1059; 38 *Harv. Law Rev.* 247. This creates a debtor and creditor relation, and if such dividend is not paid when due it may be recovered in an appropriate action by the stockholders. *Id.*

The children of William Winder Laird and Mary A. B. duPont Laird, the parties in interest under both trusts after the death of the life tenant, do not deny that this is a correct statement of the general rule. They contend, however, that

a different rule applies in this case because of the language of the particular instruments creating the trusts. But I am unable to agree with that contention.

It is pointed out that "Item 4" of the last will and testament of William Winder Laird contains two consecutive sentences in the same paragraph:

1. "I direct that the principal or corpus of the residue of my estate and the income therefrom, so long as the same are held by my trustees, shall be free from the control, debts, liabilities and engagements of any one beneficially interested therein and shall not be subject to assignment by them, nor to execution nor process for the enforcement of judgments or claims of any sort against them."

2. "I further direct that all payments of income under the provisions of my will shall be made only as the same accrues and not by way of anticipation."

It is likewise pointed out that "Paragraph (6)" of the trust deed executed by Mary A. B. duPont Laird contains three consecutive sentences:

1. "No part of the principal or income of the original trust estate nor of any of the new trust estates hereinabove provided to be carved out of the same shall be subject to the control, debts, liabilities and/or engagements of any of the beneficiaries thereof, and no part of such principal or income shall be subject to assignment or alienation by them, or any of them, nor to execution nor process for the enforcement of judgments or claims of any sort against such beneficiaries or any of them.

2. "All payments of income from said original trust estate or any of such new trust estates shall be made only as the same accrue and not by way of anticipation.

3. "It is hereby expressly understood and agreed that any attempt to so anticipate, alienate or assign shall not be binding upon the trustee and shall be wholly disregarded by the trustee."

Each instrument, therefore, contains what is known as a spendthrift trust provision and a provision prohibiting the anticipation of income by any beneficiary. But in this case, the precise question to be determined is the meaning of the latter clause.

The anti-anticipation clause of the will of William Winder Laird directs that "payments of income" shall be made only as the same "accrues," and "not by way of anticipation." A similar direction, with respect to the payment of "income" is, also, inserted in the trust deed, though the sentence is so phrased that the word "accrue" is necessarily used instead of the word "accrues." While the language used in these provisions is not identical, it is, nevertheless, so similar that they were apparently intended to have the same meaning.

As commonly understood, the word "anticipation" is "the act of doing or taking a thing before its proper time." 1 *Bouv. Law Dict.*, (*Rawles Third Revision*) *Anticipation*, p. 205; 3 *C. J. S.*, *Anticipation*, p. 1396. It has, therefore, been said to be "used in the present for what is to accrue; dealing with income before it is due." *Gray v. Board of School Inspectors*, 231 *Ill.* 63, 83 *N. E.* 95, 99 (quoting from Anderson's Law Dictionary).

In considering the meaning of the word "anticipation," *Bouvier's Law Dictionary, supra,* points out that "In deeds of trust there is frequently a provision that the income of the estate shall be paid by the trustee as it shall accrue, and not by way of anticipation." The author further adds "A payment made contrary to such provisions would not be considered as a discharge of the trustee; *Bisp. Eq.*, 104." The truth of that statement must be conceded, but it is contended that it does not determine whether any rights had vested in Mrs. Laird prior to her death.

In *Webster's New International Dictionary*, (*2d Ed.*) the word "accrue" is said to mean "to come into existence as an enforceable claim; to vest, as a right; as a cause of action has accrued when the right to sue has become vested; also, to arise or to spring as a growth or result."

In *Penington v. Commonwealth Hotel Construction Corporation*, 17 *Del. Ch.* 394, 155 *A.* 514, 519, 75 *A. L. R.* 1136, the majority of the Supreme Court pointed out that

the word "accrued" was derived from the latin words "add" and "cresco," meaning to grow to. The minority of the court did not differ from that conclusion. The majority of the court, also, said that, as used in that case, the word "accrued" meant "claims for dividends that had grown to the par value of the stock and matured and become due by the passage of time * * *." Furthermore, the same word has been held to mean "fixed and ascertained, although not yet realized in cash, or due and payable." *Orlando Orange Groves Co. v. Hale,* 119 *Fla.* 159, 161 *So.* 284, 294; see, also, *Wood Coal Co. v. State Comp. Com'r.,* 119 *W. Va.* 581, 195 *S. E.* 528; 1 *C. J. S., Accrued, p.* 760.

"Accrued liability" has been defined as "that portion of an accruing liability which has become definitely ascertainable and chargeable, although actual payment thereof is not yet due." *Web. New Inter. Dict.*

There may be cases where the word "accrue" or "accrues" is used in the sense of due and payable, or when the right to sue actually arises. *New Order B. & L. Ass'n. v. 222 Chancellor Ave., Inc.,* 106 *N. J. Eq.* 1, 149 *A.* 525; 1 *C. J. S., Accrue, p.* 762; see, also, *Eising v. Andrews,* 66 *Conn.* 58, 59, 33 *A.* 585, 50 *Am. St. Rep.* 75. But after all, the meaning of these words necessarily depends largely on the context of the instrument in which they are used, and, perhaps, to some extent, on the objects intended to be accomplished thereby. See *Penington v. Commonwealth Hotel Construction Corp.,* 17 *Del. Ch.* 394, 155 *A.* 514, 75 *A. L. R.* 1136; *O'Brien v. Sturgess,* (D. C.) 39 *F.* 2d 950; 1 *C. J. S., Accrue, pp.* 759, 761. Applying that principle to this case, and conceding that by the terms of the anti-anticipation clauses, standing alone in these instruments, payments of income cannot be made by the trustee to the beneficiary before actually due and payable, I see nothing to indicate that the word "accrue" or "accrues" prevented the dividends in question from vesting in Mrs. Laird, in accordance with the general rule, when they were declared and when they were, in

theory at least, set aside by the corporation for payment to the trustee. Nor do I see how a reading of the spendthrift clauses and the so-called anti-anticipation clauses, together in the same instrument, can affect that conclusion. It appears that a clause prohibiting the anticipation of income was first used by Lord Thurlow in a trust instrument involving a marriage settlement, in which he was the trustee. *Hood Barrs v. Herriot*, [1896] *A. C.* 174; *Bisp. Eq.*, (11th Ed.) § 82; *Lewin on Trusts*, (13th Ed.) 829. Its origin, therefore, is of a comparatively recent date. In England, prior to the use of that clause, it seems that a limitation in trust, for the sole and separate use of a married woman, or which directed that the income from the fund should be paid to her from time to time, upon her personal receipt, or upon her personal appearance, would not prevent the assignment of her interest in such trust fund. *Lewin on Trusts*, (13th Ed.) 829; *Bisp. Eq.*, (11th Ed.) § 82; see, also, *In re Brettle*, 46 *Eng. Rep.* 305; *Pike v. Fitzgibbon*, 17 *Ch. Div.* 454. In that country, perhaps, the primary purpose of the use of the usual words "not by way of anticipation," or "not by anticipation" was to prevent the beneficiary from assigning income which was not then due and payable. Those phrases, also, affected the rights of a creditor to seize such income for debts. *Bisp. Eq.*, (11th Ed.) § 82; *Hood Barrs v. Herriot*, [1896] *A. C.* 174. The rule, however, merely applied to future income, and did not affect income due, though not actually in the hands of the trustee. *Lewin on Trusts*, (13th Ed.) 830; *Bisp. Eq.*, (11th Ed.) § 82; *Hood Barrs v. Herriot*, [1896] *A. C.* 174. It must, therefore, be conceded that spendthrift trusts, as ordinarily understood in this state, have a somewhat broader scope than provisions merely restraining the anticipation of income (see § 4415, *Rev. Code* 1935; see, also, *Gray v. Corbit*, 4 *Del. Ch.* 135; *Hurd v. Hughes*, 12 *Del. Ch.* 188, 109 *A.* 418), though the former are not recognized in England. *Lewin on Trusts*, (13th Ed.) 678. In other words, it seems that while spendthrift trusts ordinarily involve a restraint on anticipation, not every

trust, in which anticipation is restrained, involves also an absolute restraint on alienation. *Griswold on Spendthrift Trusts*, §§ 512, 514. But the question here merely relates to the proper construction of the language used in these instruments. The spendthrift trust provisions expressly provide that neither the corpus of the trust nor the income therefrom shall be subject to assignment by any beneficiary, or to seizure on execution process for debts. In view of these specific provisions, it is contended that the anti-anticipation clauses must have been intended to have a broader meaning than their recognized purpose in England, and that the word "accrue" or "accrues" in those clauses must have been used in the sense of income actually received by the trustee. The conclusion is, therefore, drawn that the dividends in question had not vested in Mrs. Laird at the time of her death. As I have already indicated, I am unable to agree with that contention. Nor does the fact that the payments referred to were to be made by the trustee affect that conclusion. As the dividends in question had vested in Mary A. B. duPont Laird prior to her death, they must be paid by the trustee in each case to the Wilmington Trust Company, the executor of her estate.

Decrees will be entered in accordance with this opinion.