S. Samuel Di Falco, J.
There are two consolidated proceedings in this estate now before the court. The issues in both proceedings have been submitted to the court upon an agreed statement of facts. One of the proceedings was instituted by Gretchen Donahue, the former wife of Woolworth Donahue, the son of decedent, to determine the validity of her claim against this estate.
The claim is predicated upon a letter admittedly written by the decedent to the petitioner in November, 1945. The petitioner and decedent’s son, Woolworth Donahue, had separated and on January 16,1941 entered into a separation agreement. It recited their prior separation and contained numerous provisions for the settlement of property. Among other things the husband agreed to pay the wife the sum of $12,000 a year in equal monthly installments commencing February 1, 1941, except that in the event of her remarriage the husband’s obligation to make payments would cease. That agreement was modified by a further agreement dated November 1, 1945. The modification related to counsel fees, claims for alimony and court costs in any subsequent divorce proceeding. That agreement did not affect the obligation to pay the stipulated monthly sum. The parties were divorced by decree dated February 26, 1946.
The decedent’s letter to petitioner is dated November 21,1945 which is in the period between the modification of the agreement and the divorce decree. The letter reads as follows:
“ Dear Gretchen:
“ I am told that under some circumstances you might have to pay income taxes on the $12,000. a year that Woolworth is paying you under the separation agreement between you and him. Both Woolworth and I, however, desire you to receive and enjoy the full amount of $12,000. per year, unless you should remarry, and neither of us wishes this amount to be reduced by any income taxes on it which you may have to pay.
“ Woolworth has assured me that he expects to see to it (probably, whenever necessary, by making you gifts in addition to the $12,000.) that each year, unless you should remarry, you will receive enough from him that you will have from him $12,000. for yourself above the payment of such taxes. On my own behalf, let this letter be my personal assurance that if, for any reason, Woolworth does not carry out this arrangement, I will do so.
*926 “I expect, of course, that you will enter into the amendment, to the separation agreement between you and Woolworth now in contemplation.
Faithfully yours,
" /s/ Jessie W. Donahue
1 ‘ P.S. The above income taxes, of course, are the taxes that you would have to pay if the $12,000. was your only income.
J.W. D.”
The decedent’s son died on April 5,1972, domiciled in the State of Florida where his will has been duly admitted to probate. It is agreed that from the time of the separation agreement to and including, the month of April, 1972 (the month in which the son died) the petitioner received from the son the full payment of $1,000 a month. In addition he paid to her the amount of income taxes accrued on the annual sum of $12,000. Subsequent to April, 1972 no monthly payments were made.
The petitioner filed a claim in Florida against the estate of Woolworth Donahue for payments under the separation agreement subsequent to the date of his death in the amount of $12,000 a year, plus all Federal, State and local income taxesAhat she would be obligated to pay on alimony. That claim was unsuccessful because of provisions of Florida law barring claims after the lapse of the specified period for instituting an action on the claim. The petitioner sought an extension of her time to file suit and that petition was denied. She therefore cannot proceed further against the estate of Woolworth Donahue.
In addition to making all of the payments, including the payment due for the month in which he died, Woolworth Donahue made provision in his will for his former wife. He referred to the separation agreement and expressed his intention that his fiduciaries should fulfill all obligations which might exist under the agreement after his death. He then provided that she was to receive from the residuary trust the sum of $1,000 a month for the period following his death and each month thereafter during her lifetime and up to her remarriage. The trustees were also to pay her additional amounts so as to provide for all the Federal, State and local taxes payable by her by reason of the payments to her from the trust.
It is agreed that the payments made by Mr. Donahue to petitioner during his lifetime to reimburse her for income taxes were not included by him as a deduction in his income tax returns, and were not included by the petitioner in her income tax returns as alimony received. There is nothing in the separation agree *927 ment which • requires these tax payments. Hence all parties have treated them as gratuitous payments by the former husband to petitioner. The petitioner, having failed in any attempt to collect the alimony payments from her former husband’s estate, now proceeds against his mother’s estate as a guarantor. She claims that the mother guaranteed the $12,000 a year and the additional income tax reimbursement.
Beading the letter of the decedent against the stipulated background facts, the court construes it to relate only to the income tax payments on the alimony. The separation agreement does provide for the alimony. The husband was not only able to make the payments, but in fact he faithfully performed the agreement up to the very moment of his death. There was never any binding agreement for payment of the additional sum to cover the taxes. Not only is there no proof of such agreement, but the decedent’s letter makes it clear that these were in the nature of gifts and expressed the desires of mother and son and their assurances to each other with respect to the making of gifts to petitioner. The letter was obviously drafted with tax considerations in mind. The letter cannot reasonably be construed to guarantee payment of the $12,000 a year, about which there was no problem at all on November 21, 1945. The agreements between husband and wife had been definitively settled and duly executed and there was no reason for demanding something additional to the obligation in the agreement itself. Inasmuch as the petitioner has never received any alimony since the death of her former husband, there is no obligation on the part of anyone to reimburse her for income taxes on income which she never received. Hence, even if we should read the agreement as a guarantee of the making of these gifts — which is not at all clear from the agreement — there is no obligation of this estate under the terms of the agreement.
Even if the agreement could be construed as a guarantee of payment of the $12,000 a year, the court would be required to look to the primary obligation of the son under the separation agreement. The separation agreement provides that it shall be construed and governed by New York law. A man’s obligation to pay alimony under an agreement or a decree of divorce does not extend beyond the husband’s death unless the parties specifically agreed that an allowance should be made to the wife beyond the husband’s lifetime. (Wilson v. Hinman, 182 N. Y. 408.) In the cited case the court said (p. 414): “ The security required might not be in the shape of a lien on any specific property, but merely the personal obligation of sureties. In that case it would *928 hardly be contended that the obligation of the sureties would extend beyond that of their principal.”
In Matter of Maslanka (63 Misc 2d 70, 71) it is stated: “ Whether the weekly payments survive or terminate at the husband’s death depends upon whatever agreement the parties make and this can be determined only from a reading of all the terms. (Wilson v. Hinman, 182 N. Y. 408; Lepsch v. Lepsch, 275 App. Div. 412.) Here the provision is totally silent as to duration of payment. Had the parties so intended, it would have been .a relatively simple matter to spell out a post-mortem obligation simply by . stating that payments were to continue during the wife’s life and to survive the husband’s death. (Matter of Burridge, 261 N. Y. 225; Barnes v. Klug, 129 App. Div. 192; Matter of Fuller, 151 Misc. 387, affd. 242 App. Div. 623; Matter of Golding, 127 Misc. 821; Matter of Herb, 163 Misc. 441) ”
There is no provision in the separation agreement extending the liability of the husband beyond his death. The fact that Woolworth Donahue made a provision in his Florida will, some 24 years later, to pay the petitioner the alimony referred to in the separation agreement, does not in any way alter the separation agreement. The provision in the Florida will may constitute a legacy enforceable only in that jurisdiction and in no manner affects the separation agreement or its guarantor.
The only basis for petitioner to claim that the agreement was intended to extend beyond her husband’s death is. one of the' recitals which precede the promises and mutual conveyances. The recital is: “ Whereas, the Husband and Wife have mutually agreed upon what is a reasonable provision for the support and maintenance of the- Wife, past, present and for the remainder of the natural life of the Wife or until her remarriage ’ ’. This recital was not related to any one of the promises or conveyances and must be read with the recital that the disposition of property was to free and discharge the husband of any and all present, past or future claims of dower or property rights of any kind so that he and his legal representatives should hold his property to his sole and separate use. When we read the promise itself and the obligation of the husband, no period of time is fixed, except that the obligation is to pay monthly and is to cease at the remarriage. Both husband and wife released all rights he or she might have to share in any capacity in the estate of the other, to act as fiduciary or to participate in the administration of the estate. Whether any provision for taking care of her after his death was the result of tax considerations *929 or whether the wife depended upon her husband’s private assurances or generosity, the agreement made no provision for any testamentary gift. The husband’s will, which provided not only for the monthly sum but for the additional tax benefit, does not pretend to be in compliance with any contractual obligation.
The court finds that the obligation of the decedent under the agreement did not extend over any period beyond his death.
Moreover, the petitioner permitted any claim that she might have had against her former husband to lapse under the Statute of Limitations of Florida. In Matter of Cheesman (236 N. Y. 47, 51), it is stated: “ It is the general rule that a surety is not liable if the original debt is barred by the Statute of Limitations. In such a case no recovery may be had even where the principal has allowed judgment to be taken against him. The surety may avail itself of the statute in an action brought against it. (Dawes v. Shed, 15 Mass. 6; McMullen v. Rafferty, 89 N. Y. 456; Williston on Contracts, 1283.) The same principle is applicable here.”
Accordingly the petitioner’s claim for payment of her deceased husband’s alimony obligation against this estate, as a guarantor,' is dismissed.
The second proceeding before the court involves the determination of two claims of the Woolworth Donahue estate against this estate. The first claim is for $54,000, representing a dividend on 180,000 shares of stock of F. W. Woolworth Co. owned by the decedent at the time of her death. This dividend was payable to stockholders of record at the close of business of the corporation on November 1, 1971. It is undisputed that the decedent died at 6:30 a.m. on November 1, 1971. The dividend was paid on December 1, 1971. The sole issue involved in this claim is whether or not the dividend constitutes principal of this estate or whether the dividend accrued to the benefit of Woolworth Donahue as income beneficiary under the decedent’s will and constitutes income now payable to his fiduciaries.
There appear to be no cases in this jurisdiction involving the precise fact situation presented here and this is a case of first impression. The Florida executor contends that this dividend is income because the precise time of death should be considered by the court and the fact that the decedent expired hours before the close of business of the corporation is sufficient to fix the accrual of the dividend as subsequent to the death of the decedent.
With respect to the court considering the fractions of the day, the parties cite conflicting cases. Respondents rely on Ely v. Ely (163 App. Div. 320, 344) which says: “ There seem to be no *930 New York cases upon the precise point here involved, but it is the general rule that the law does not take into account fractions of a day. As, therefore, the testator was alive and in possession of the property upon the day upon which the rents accrued, we conclude that the Special Term correctly decided that said rents belonged to his estate. ’ ’ Petitioner cites People ex rel. Cherry v. Graves (219 App. Div. 563, 568): “ It would serve no just or useful purpose for this court to apply the maximum that the law takes no cognizance of a fraction of a day. * * * That maxim of the law is not a rule of universal application. It is a legal fiction which is applied where the interests of justice will be served but never against the right and justice of the case.” However, the latter case did not concern itself with the determination of the time effective for the transfer of any property and was based upon a different fact situation.
EPTL 11-2.1 (subd. [e], par. [11]) provides: “ (11) Where the shares of stock of a corporation or association of this state or of any other jurisdiction constitute part of an estate, trust or other fund, and the allocation of any other distribution thereof to principal or income * * * depends on the date of accrual thereof, the date of accrual of any distribution on such shares shall be the date specified by the corporation or association declaring such distribution as that on which the shareholders of record entitled to such distribution are to be determined * * *. For the purposes of this paragraph, the 1 date of accrual ’ of a distribution means that date, on and after which the distribution shall be treated in the same manner as if it had been declared and paid or distributed on such date. ’ ’ (Emphasis added.)
It is clear beyond dispute that if the decedent had died on the day before November 1, the dividend in issue would be considered income, if she had died on November 2, it would constitute principal. It seems equally clear to the court that her death on the day the dividend 1 ‘ accrued ’ ’ requires us to consider the dividend as if it had been paid or distributed on that date. If it had been actually paid on that date, it would belong to decedent and would be a principal asset.
To require a fiduciary to take into account the hour and minute of death and the hour and minute when the corporation closed its record of stockholders for the dividend distribution, would be burdensome and complicated. Fiduciaries would have to take into account time zones and time changes in all distributions dose to the date of death, with final decision often resting with the court. The statute does not require splitting the day *931 in that manner. It .explicitly deals with a distribution on the record date and says to treat it as paid on that date.
The rule governing tax treatment results in the very same allocation. Thus the Internal Revenue Tax Regulations (Code of Fed. Reg., tit. 26, § 20.2033-1, subd.. [b]) provide as follows: “ Similarly, dividends which are payable to the decedent or his estate by reason of the fact that on or before the date of the decedent’s death he was a stockholder of record (but which have not been collected at death) constitute a part of the gross .estate. ’ ’ Therefore, the fiduciaries of this estate are required to treat the dividend as principal of this estate for tax purposes.
The court accordingly rules that the dividend constitutes principal and the petitioner’s application for payment thereof is denied.
The last issue to be adjudicated in this proceeding is the petitioner’s demand that this estate reimburse the Woolworth Donahue estate for expenses paid by Woolworth Donahue in his lifetime in reference to the “ Calverton property ” in which he was bequeathed a legal life estate under paragraph Seventeenth of this will which reads as follows:
“ seventeenth: I give, devise and bequeath to my son, Woolworth Donahue, if he shall survive me, for his use during his natural life all of my real property, and the buildings and improvements thereon, located at Calverton, Suffolk County, New York, together with all furniture, furnishings, articles of household use or ornament, equipment, and all other tangible personal property located in, on or at said property, except personal effects and articles herein otherwise bequeathed.
“ My said son Woolworth Donahue, shall use and occupy the property described above without payment of any rent, but he shall pay all the charges, costs and expenses, including taxes, connected with or related to said property, so long as it shall be used and occupied by him. If at any time my said son, Woolworth Donahue, shall notify my Executors, in writing, that he does not desire to use and occupy the property, then my Execu- - tors shall sell the property, at public or private sale, and the net proceeds of such sale shall be added to and made part of my residuary estate.
“If at any time during his use and occupancy of the above property, my said son Woolworth Donahue, shall fail to pay any of the charges, costs and expenses related thereto, my Trustees shall pay such charges, costs and expenses from the income of the residuary trust hereinafter created for my said son, Woolworth Donahue.
*932 “ If my said son, Woolworth Donahue, shall not survive me, or, if he shall survive me, upon the termination of his life estate, I direct my Executors to sell the aforesaid property, if it has not been disposed of during his lifetime, and to add the net proceeds of such sale or sales to my residuary estate.”
It is stipulated by the parties that Woolworth Donahue did not use or occupy this property subsequent to the death of the decedent herein nor did he ever give notice to the respondents that he did not desire to use or occupy this property. It is further conceded by the parties that during the period between the death of this decedent (Nov. 1, 1971) and the death of Woolworth Donahue (April 7, 1972), he made payments with relation to the “ Calverton property ” in the total sum of $12,503.67. That sum is being claimed by the petitioner, as legal representative of Woolworth Donahue, together with interest thereon.
The basis of the claim of the son’s estate is that he never used or occupied the premises and accordingly should not be required to pay for charges, costs and expenses relating to it. It is asserted that the respondent executors originally agreed to reimburse petitioner’s estate, but later refused because the failure of the son to renounce the devise might result in a disallowance by the taxing authorities of any deductions to the respondent estate of such expenses.
It is a well-settled principle of law that title to real property vests in the devisee as of the testator’s date of death. Woolworth Donahue never gave any written notification, as required by the will, that he did not desire to use and occupy the property. On the contrary, he actually paid real estate taxes and other expenses of the property, which are acts consistent with an intent and purpose to use and enjoy the property and wholly inconsistent with an intent to renounce the devise. The fact that he did not actually use and occupy the premises loses any real significance, considering the short interval of time between his mother’s death, and his own. Moreover, the fiduciaries of this estate could not exercise any power to sell this property without written notification from Woolworth Donahue. The life estate in the Calverton property is deemed to have vested in Woolworth Donahue at the time of Jessie Donahue’s death. Therefore, the petitioner’s application for reimbursement is denied and this claim is dismissed.