[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 456 
AmSouth Bank, as trustee of an inter vivos trust created in 1943 by Neva E. McIlvaine (settlor), filed an action for a declaratory judgment and instructions as to the proper distribution of a one-third share of the current and future net income from the trust. The settlor was a resident of the State of Florida when she created the trust. AmSouth's complaint alleged that the trust agreement provides that the net income from the corpus of the trust, which consists principally of common stock in the Torchmark Corporation, be paid in equal shares to the settlor's three children during their respective lifetimes, or, upon the death of a child, to the "lawful issue of the body" of such child for his or her lifetime. The complaint further alleged that Eugene Thomas McIlvaine, Jr. (Tommy), one of the settlor's children, died on April 11, 1989, the record date for the payment of a stock dividend to the trust. The trustee, therefore, sought instructions as to whether, under the terms of the trust, Tommy's estate or the successor beneficiaries were entitled to the dividend.
AmSouth also alleged that Tommy was survived by a natural son named Eugene Thomas McIlvaine III (Gene) and an adopted daughter, also named Neva E. McIlvaine, and that AmSouth was, therefore, uncertain as to whether future income should be paid solely to Gene or should be divided equally between Gene and Neva.
After answering the complaint, Gene filed a motion for summary judgment. Thereafter, Neva filed a cross-motion for summary judgment. Neva was joined in her motion by Dorothy J. McIlvaine, who is Tommy's widow and the executrix of his estate. The trial court denied Gene's motion for summary judgment and entered a summary judgment for Neva and Dorothy. The trial court instructed the trustee to pay the April 11, 1989, dividend to Dorothy J. McIlvaine as executrix of Tommy's estate and to divide one-third of the future net income from the trust equally between Gene and Neva. Gene appeals.
On appeal, Gene argues that the trial court erred in instructing the trustee to pay the April 11 dividend to Tommy's estate, because, he argues, Tommy died before the close of business on that date. He also contends that the trial court further erred in instructing the trustee to divide the future net income from the trust between Neva and him, because, he argues, the intent of the settlor of the trust, through her use of terms like "lawful issue of the body," was to exclude adopted children from taking under the trust.
 I. The Dividend Issue
The trial court found the facts related to this issue to be undisputed. The principal asset of the McIlvaine trust is common stock of the Torchmark Corporation. Torchmark, a Delaware corporation with its principal place of business in Birmingham, Alabama, declared a dividend on February 23, 1989, payable to stockholders of record at the close of business on April 11, 1989. The dividend was to be distributed on May 1, 1989. Tommy, the beneficial owner of one-third of the shares and, thus, of one-third of the dividends, died in New York City on April 11, 1989, at 7:15 a.m., E.S.T.
Based on the undisputed facts, the trial court held that Tommy became the beneficial owner of the dividend as of the declaration date (February 23, 1989) and, therefore, that his one-third share of the dividend should be paid to his estate. In reaching its holding, the trial court applied Delaware law in determining when the rights of the shareholder vest in a corporate distribution and Florida law in determining the rights of a trust beneficiary to a *Page 457 
dividend. Although neither party raises the trial court's choice of law as an issue, Gene does state that Alabama law should have been applied in determining the rights of the beneficiaries to the dividend. He goes on to note, however, that the law of Alabama and the law of Florida are consistent on the question, and therefore, he does not request our consideration of the issue.
In his appeal, Gene argues that the trial court erred in finding that Tommy's right to the dividend vested before his death. He asserts that Tommy's estate is not entitled to the dividend, because, he argues, although Tommy was alive for part of the day on April 11, 1989, he died prior to the close of business on that date. Gene asserts that, as a result, Tommy's share of the dividend should pass to Gene, who claims to be the successor beneficiary under the trust.
Initially, we note that as a general rule, a dividend belongs to those who are owners of the shares at the time it is declared and not to those who are owners of the shares at the time the dividend is paid. 3A W. Fratcher, Scott on Trusts § 236.2 (4th ed. 1988). When a corporation declares a dividend, the dividend is separated from the assets of the corporation, and a debt to those who are shareholders at the time of the declaration is created, although payment of the debt is postponed. Selly v. Fleming Coal Co., 37 Del. 34, 180 A. 326
(1935); Scott on Trusts, supra.
However, where the dividend is payable to shareholders of record on a specified date subsequent to the declaration date, those who are shareholders on the record date are entitled to the dividend, because the debt created by the declaration is a debt to those who are shareholders on that date. Scott onTrusts, supra. Likewise, where corporate stock is held in trust, the estate of the income beneficiary is entitled to all regular cash dividends declared for the benefit of stockholders of record on dates prior to the beneficiary's death, despite the fact that the trustee may not actually receive such dividends until after the death of the income beneficiary.Wilmington Trust Co. v. Wilmington Trust Co., 25 Del. Ch. 193,15 A.2d 665 (1940).
Thus, where a dividend is declared during the life of the income beneficiary and is payable to shareholders of record on a date prior to the death of the beneficiary, the dividend is included in the estate of the beneficiary, even though it is not payable until after the death of the beneficiary. SeeHayward v. Blake, 247 Mass. 430, 142 N.E. 52 (1924); Scott onTrusts, supra; Restatement of the Law of Trusts § 236, ill. 7 (2d ed. 1959). Conversely, where a dividend is declared during the life of the income beneficiary and is payable to shareholders of record on a date subsequent to the death of the beneficiary, the dividend is not included in the estate of the beneficiary. See Nutter v. Andrews, 246 Mass. 224, 142 N.E. 67
(1923); Scott on Trusts, supra; Restatement of the Law ofTrusts § 236, ill. 8 (2d ed. 1959).
In the present case, however, we are confronted with the unusual situation wherein the beneficiary died on the date designated by the corporation for the determination of its shareholders of record. Although there is no Delaware case considering the exact issue raised by the facts of this case, the trial court relied on a New York case that is on point. InIn re Estate of Donahue, 78 Misc.2d 923, 357 N.Y.S.2d 777
(N.Y.Sur.Ct. 1974), affirmed, 48 A.D.2d 815, 370 N.Y.S.2d 67
(1975), a dividend was declared to shareholders of record at the close of business on a certain day. A shareholder died at 6:30 a.m. on the record date. The shareholder, in her will, had named her son as income beneficiary of a testamentary trust whose corpus was the corporate stock on which the dividend had been declared. The issue for the court, therefore, was whether the dividend belonged to the estate of the deceased shareholder or to the income beneficiary. The Donahue court noted that if the decedent had died on the day before the record date, the dividend in question would have been considered income and would have rightfully belonged to the income beneficiary, and that if she had died on the day following the record date, the dividend would have *Page 458 
belonged to her estate. The court further reasoned that the shareholder's death on the day the dividend accrued required the court to consider the dividend as if it had been paid or distributed on that date. Therefore, the court held that the dividend belonged to the estate.
In reaching its conclusion, the Donahue court expressly refused to consider the fact that the shareholder lived through only a part of the record date and was, in fact, dead at the close of business on the record date. The Donahue court opined that to require a fiduciary to take into account the precise time of the shareholder's death and the exact hour and minute at which the corporation's business day ended would be burdensome and complicated. The court also noted that if fractions of a day were considered, fiduciaries would have to take into account time zones and time changes in distributions occurring close to the date of shareholder's death.
The trial court in the present case likewise refused to take into account a fraction of a day. In refusing to take into account the undisputed fact that Tommy had died before the close of business on the record date, the trial court concluded that "[w]ith the modern world's involvement with transnational and international travel across multiple time zones, the Court perceives that great confusion and uncertainty would arise if a 'fraction of a day' rule were adopted." We agree.
Although Gene cites to us cases from various jurisdictions wherein the respective courts have taken into account fractions of a day, we have examined those cases and find none of them to be analogous to the facts in the present case. On the other hand, we find merit in the approach taken by theDonahue court, which refused to take into account a fraction of a day under facts similar to those presented here.
Generally, a day is considered to be an indivisible unit or period of time, and, thus, it is frequently stated that the law will not take into account fractions of a day. Under this general rule, any fraction of a day is deemed to be a full day. 86 C.J.S. Time § 16 (1954). To apply a "fraction of a day" rule to facts like those in the present case would lead to confusion as courts attempt to ascertain such factors as the exact hour and minute that an event takes place, the applicable time zones, or the hours of business of a particular corporation, to name but a few. We find that the trial court correctly held that Tommy was the beneficial shareholder of the stock on April 11, 1989, the record date, and that, as a result, his estate is entitled to the dividend.
 II. The Adoption Issue
In its complaint, AmSouth sought instructions from the trial court as to whether, under the terms of the trust agreement, Neva, Tommy's adopted daughter, would be entitled to share equally with Gene in one-third of the future net income from the trust. The trial court first held that, considering the facts surrounding the creation of the trust, as well as the terms of the trust itself, Florida law should be applied in interpreting the trust agreement. Neither party argues that the trial court's choice of law was reversible error.
The trial court, applying Florida law, found the trust agreement to be ambiguous and that, as a result, the settlor's intention could not be clearly ascertained from the words within the four corners of the agreement. Therefore, the court attempted to interpret the ambiguous provisions of the trust agreement by applying statutory and common law rules of construction. On the basis of perceived public policy concerns that adopted children be placed on an equal footing with natural children, the trial court gave retroactive effect to certain provisions in the Florida Adoption Act and held that Tommy's share of the income from the trust should be divided equally between his natural son and his adopted daughter.
The record in the present case reveals that Tommy divorced Gene's mother in 1946 and married Dorothy in 1953. In 1969, Tommy and Dorothy adopted Neva, who was less than a month old at the time. At his death, Tommy was survived by Dorothy and by Gene and Neva. The language that the trial court was asked to interpret *Page 459 
is found in Articles IV and V of the trust agreement:
 "IV. The trust herein set up shall continue at least during the lifetime of the Grantor and during the lifetime of the three children of the grantor, the beneficiaries hereunder in equal parts, that is to say:
 Eugene Thomas McIlvaine, Jr., Lee Edmundson McIlvaine, and Helen McCann
 and the Trustee shall pay the income of this trust to said children of Grantor or their issue in equal convenient installments, as nearly monthly as possible. After the death of all of said children the said trust shall continue for the period of twenty-one (21) years and no longer. Upon the termination of said trust in the manner aforesaid the principal or corpus of said trust, together with any accumulated income, shall vest in and be distributed to those persons who would have been the legal heirs at law of the grantor under the then laws of the State of Florida had the Grantor died intestate at the time of such termination of such trust.
 "V. During the continuance of said trust should any one of the Grantor's children hereinabove named die prior to the termination of said trust, then the interest of the deceased beneficiary or beneficiaries in the income shall descend to the lawful issue of the body of such deceased beneficiary or beneficiaries, and if there be no such issue of the body the interest of such deceased beneficiary shall vest equally in the remaining children of the Grantor or their issue
per stirpes and not per capita."
(Emphasis supplied.)
On appeal, Gene argues that the trial court erred in holding that adopted children were not excluded by the express language of the trust agreement. He asserts that the terms used in the trust agreement had definite legal meaning at the time the agreement was executed and specifically operated to exclude adopted children from taking under the terms of the trust. He also contends that the retroactive application of the Florida Adoption Act provisions placing adopted children on an equal footing with natural children is unconstitutional under the facts of this case.
We begin our analysis of this issue by recognizing certain principles of Florida law: The most basic tenet in the interpretation of trust agreements is that a court should ascertain and give effect to the intent of the settlor.Bacardi v. White, 463 So.2d 218 (Fla. 1985). Unless the trust instrument is ambiguous, the intent of the settlor must be ascertained from the wording of the trust instrument itself and no extrinsic evidence of the settlor's intent is admissible.Knauer v. Barnett, 360 So.2d 399 (Fla. 1978). The settlor's intent should not be determined by a reading of isolated words and phrases, but, rather, the instrument as a whole should be considered and the settlor's general plan interpreted. FirstNat'l Bank of Florida v. Moffett, 479 So.2d 312 (Fla. Dist. Ct. App. 1985).
The appellate courts of Florida have, on three separate occasions, addressed facts similar to those presented in the present case. In Green v. Quincy State Bank, 368 So.2d 451
(Fla.Dist.Ct.App. 1979), the First District Court of Appeals was faced with the issue whether an adopted child was included in the terms of an irrevocable inter vivos trust whose beneficiaries were the "living children" of the adopted child'snatural parents. At the time of the execution of the trust inGreen, the rights of an adopted child to inherit from its natural parents were statutorily preserved. The statutes, however, were subsequently changed to provide that an adopted child's rights of inheritance from its natural parents terminate with adoption. The Green court refused to apply the new statutes retroactively, holding that the construction of the terms of the trust agreement must be determined by the law in effect at the execution of the irrevocable trust agreement.
One year later, in Lewis v. Green, 389 So.2d 235 (Fla. Dist. Ct. App. 1980), petition for review denied, 397 So.2d 778 (Fla. 1981), the Fifth District Court of Appeals considered the question whether adopted children *Page 460 
are "issue" or "lineal descendants" for purposes of sharing in income from a testamentary trust. The court wrote:
 "The better view is that adopted children are the issue and the lineal descendants of their adopting parents for purposes of inheriting under a will or trust instrument. [Citations omitted.] Courts look to the law of the applicable state at the time of termination of the prior life estate rather than the law at the time the will was written, or when the testator died, to determine the testator's intent to include or exclude adopted children. [Citation omitted.] The explanation offered is that the testator must have known the laws of descent and inheritance would change over the duration of a long-term trust."
389 So.2d at 241. The Lewis court held that, because of the clear public policy expressed in the Florida statutes, there was no longer any reason to treat an adopted child differently from a natural child for purposes of intestate or testate inheritance.
The Second District Court of Appeals, in In re Martell,457 So.2d 1064 (Fla.Dist.Ct.App. 1984), contemplated an issue similar to that presented in Green v. Quincy State Bank, supra:
Whether an adopted child was entitled to share in the corpus of a trust to be distributed to the "issue" of the adopted child's natural father. The Martell court, citing Lewis v. Green,supra, noted that courts look to the law in effect when a testamentary trust terminates rather than the law at the time the will was written or when the testator died to determine whether an individual comes within a class of remaindermen designated by will to take at the expiration of a life estate. The court then applied the adoption statute in effect at the termination of the trust, which provided that adoption terminates the rights of an adopted child to inherit from the child's natural relatives. In applying the statute retroactively, the Martell court expressly disagreed with the holding in Green v. Quincy State Bank, supra, which had refused to apply the statute retroactively.
The trial court, in the present case, followed theLewis and Martell holdings and reached the conclusion that Neva, the adopted grandchild of the settlor, should share in the net income of the trust. We agree with its decision.
In this case, the settlor used four different terms to describe the class of beneficiaries who would be entitled to the net income from the trust following the death of the named beneficiaries or to proceeds from the corpus upon the termination of the trust. In Article IV, the settlor used the term "issue," as well as "legal heirs at law," while in Article V, the terms "issue," "lawful issue of the body," and "issue of the body" are used. As the trial court noted, ambiguity exists because the words "lawful" or "legal" in the two phrases "legal heirs at law" and "lawful issue of the body" either can reflect an intention to exclude "unlawful" heirs or issue, i.e., children whose adoption was not legally effective or illegitimate children, or can be superfluous. The intrinsic ambiguity, as well as the lack of extrinsic evidence in the record regarding the settlor's intention to exclude adopted children, tends to show that the grantor did not specifically intend to exclude adopted children from the class of potential beneficiaries.
Furthermore, public policy, as expressed in the Florida statutes, indicates that adopted children are to be treated in the same manner as natural children, for purposes of inheritance. Section 72.06, Fla.Stat. (1941), provided that an adopted child "shall be declared the child and heir-at-law of the person applying for his adoption." In 1943, the legislature added that the adopted child shall be "entitled to all rights and privileges . . . of a child born to such parent or parents in lawful wedlock." Ch. 21759, § 16, Fla. Laws (1943); as further amended, § 63.151, Fla.Stat. (1969). Further legislation in 1973 and 1975 created § 63.172, the present statute. See In re Estate of Carlton, 348 So.2d 896, n. 1 (Fla. Dist. Ct. App. 1977). Section 63.172, Fla.Stat. (1989), provides, in relevant part:
 "(1) A judgment of adoption, whether entered by a court of this state, another *Page 461 
state, or of any other place, has the following effect:
". . . .
 (c) It creates the relationship between the adopted person and the petitioner and all relatives of the petitioner that would have existed if the adopted person were a legitimate blood descendant of the petitioner. This relationship shall be created for all purposes, including inheritance and applicability of statutes, documents and instruments, whether executed before or after entry of the adoption judgment, that do not expressly exclude an adopted person from their operation or effect."
Section 732.108 further provides:
 "(1) For the purpose of intestate succession by or from an adopted person, the adopted person is a lineal descendant of the adopting parent and is one of the natural kindred of all members of the adopting parent's family. . . ."
It is apparent that now, in Florida, the adopted child is transformed by legislative fiat into the heir, issue, and descendant of the adopting parent the same as natural children of the adopting parent.
Although Gene argues that his constitutional rights to due process are violated by the retroactive application of these statutes, we find no such violation. As noted above, a predecessor of § 63.172 was in effect in Florida as early as 1941, illustrating even then the preference that adopted children and natural children be treated equally. Therefore, although this case may involve the retroactive application of the present-day statute, there is no retroactive application of the policy underlying the modern statute.
Furthermore, a statute is not unconstitutionally retrospective in its operation unless it impairs a substantive, vested right. In re Martell, supra. A substantive, vested right is an immediate right of present enjoyment or a present fixed right of future enjoyment. City of Sanford v. McClelland,121 Fla. 253, 163 So. 513 (1935). To be vested, a right must be more than a mere expectation based on anticipation that an existing law will continue in effect; it must have become a title, legal or equitable, to the present or future enforcement of a demand. Division of Workers' Comp. v. Brevda,420 So.2d 887 (Fla.Dist.Ct.App. 1982).
Here, the retroactive application of the statute will not result in a taking of Gene's right to share in the net income of the trust; rather, the statute is being applied merely to determine who is to be included in an open class of beneficiaries. In 1943, when the trust was created, Gene was among the contingent members of a class of yet-to-be determined beneficiaries. His right to any part of the net trust income was completely contingent on his surviving Tommy. Furthermore, his portion of the net trust income was also contingent on the size of the class, which could not be determined until the moment of Tommy's death. Thus, he had no immediate, fixed right in 1943 to future enjoyment. The class was open, and his share was contingent. Therefore, we find no error in the trial court's application of the adoption statute to determine the beneficiaries under the trust and to determine the meaning of the trust terms when the settlor's intentions were unclear.
We conclude that the trial court correctly held that Tommy's estate is entitled to the dividend payable to shareholders of record on April 11, 1989, and that the trial court correctly instructed the trustee to divide one-third of the future net income from the trust equally between Tommy's natural son, Gene, and Tommy's adopted daughter, Neva. Therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur. *Page 462